Submitted and we'll move to the second case of the day which is 21-12136 Butler v. Gualtieri. The first two days we heard nine arguments and of the 18 lawyers who appeared, 17 were men. I appreciate our advocates leaving the courtroom and our advocate who is about to step to the podium beginning to balance the scales a bit. Case number two, Butler v. Gualtieri. Ms. McDonough is here for the appellate, Mr. Farmer for the appellee. Good morning, may it please the court, I'm Anne McDonough and I represent the appellee Bob Gualtieri, Pinellas County Sheriff. We're here today to address the denial of the sheriff's assertion of sovereign immunity as to the count one of Ms. Butler's complaint, second amendment complaint alleging battery. The issue here is whether or not Ms. Amy G., who is a defaulted defendant in this case, her action of tripping and throwing a handcuffed, heavily intoxicated plaintiff to the floor while she had no control over her, whether that was willful and wanton. In this case, it's undisputed that Ms. G.'s actions were unnecessary, unreasonable, excessive, without cause, intentional, without provocation and gratuitous. We submit to you that all of those essentially are definitions of willful and wanton. Sovereign immunity in Florida is the rule rather than the exception. Sovereign immunity is only waived for acts that are not committed, among other things, willfully and wantonly. So Florida, the district court acknowledged that Florida retains jurisdiction for acts that are committed willfully and wantonly. And sovereign immunity waivers must be construed narrowly in favor of the government. The waiver has to be clear and unequivocal, strictly construed and not by inference or implication. And the courts cannot expand on 768-28-9A because the statute is clear and the court has to presume that the statute means what it says. Florida courts look to federal decisions involving the FTCA when interpreting 768-28. That's a recent case, Gualteri v. Pownell, 2022, Westlaw 944318, a second DCA case from Florida. And in the federal jurisdiction, it is also the burden on the person who is trying to get the waiver of sovereign immunity to happen. Not for the government to disprove that the waiver has been committed, but that the person who's the plaintiff has to demonstrate waiver. There's no support to demonstrate that the burden is on the sheriff to demonstrate that the waiver did not occur. I mean, both your characterization of the facts and Ms. Butler's both suggest that this happened very quickly. Ms. Butler contends that Officer Gee simply reacted and when the takedown or when she threw the person to the ground, assuming that's correct, would that still be enough to satisfy the statute in terms of the intentional wrongdoing, stepping outside the bounds of acting as a deputy? Yes, Your Honor. The issue for Battery, a law enforcement officer, is whether or not it's reasonable, the force is reasonable and the amount of force was reasonable under the totality of circumstances. And there are numerous cases in which even with quick decisions being made, the court made the decision that it was willful and wanton or in bad faith or in malice and therefore did not make it go to the jury. I can give you some examples. Asperilla v. Trinidad. It's a 2009 case from the Middle District of Florida. In that case, an officer was escorting a person who was a subject being made to leave a The court deemed that to be willful and wanton because of the fact that it was obvious that the person could be severely injured by that action. So even though there was nothing in there indicating how much time he had to think about it, what his thought process was, the court deemed that to be willful and wanton. And I would say to you, this is somewhat similar to cases in which someone would tase someone while they were on a roof or on a wall or on a bicycle or motorcycle where the foreseeability of the injury is such that that can make it willful and wanton. The willful and wanton is defined as knowingly or reasonably, sorry, knowing that the conduct would naturally or probably result in injury and disregarding the foreseeable consequences. It is a standard that is at least as high as the standard needed to prove deliberate indifference. And so another example would be a recent case from the Middle District, Taylor v. Wagner. This was on video, as was the Aspirilla case in which there was a bear hug of the plaintiff, grabbed her, slammed her into a truck, and then slammed her down to the ground. And that's actually even, this case is worse, because Amy G. just had the sleeve of Marie Butler, and that is seen on video. And then she grabs her by the neck, trips her from behind, and she admits that she does this in order to throw her off balance, and then throws her down. So she doesn't have her in a bear hug the way in Taylor v. Wagner. But in that case, the complaint alleged, similar to this case, that she had voluntarily cooperated, that she had committed no resistance. And yet, because of that type of uncontrolled force and the foreseeability of the injury, the court deemed that to be willful and wanton and said no reasonable juror could find otherwise. Well, didn't most of the observers, the other deputies that were present, say that in their view or their opinion or their perception that she followed appropriate procedures and that did not intentionally subject Ms. G. to harm, I mean Ms. Butler to harm? Yes, your honor, most of the people that are cited here did not actually view the incident themselves. They ended up watching it on video later. And one of them, Lieutenant Christian, when she was questioned about it during her testimony before the administrative review board, said from a base assessment without doing any further investigation, it appeared reasonable. And then she was discussing how once she viewed the video, she didn't agree that it was inadvertent because one of the things that Ms. Butler is using this for is to try to argue that trying to use their testimony for the state of mind of Ms. G, which we submit is inadmissible. But at any rate, in that case, she said she didn't believe necessarily that the conduct was inadvertent. But she also didn't see the incident. She had to watch it on video because she only saw it out of the corner of her eye. Another one saw the fall but didn't get to see exactly what happened. He just saw it because the pillar and the counter blocked him. When he watched the video, he said it looked like a simple force and it wasn't an extensively aggressive force. Several people talked about how, well, she grabbed her by the neck, which is the red zone, but we don't think it was purposeful. A lot of that is because Ms. G said she didn't grab her by the neck on purpose. And because as one of them said, we all know you never do a chokehold. And then there was somebody, Deputy Mitchell, who said force wasn't necessary and she could have been stabilized against the counter. Ms. G was trained on many different ways to handle something like this. And in this case, this is different than a lot of the cases that are out there because you have a person who's been searched, who was in a small area inside a jail that is fully secured. She's a misdemeanant. One of the people that was questioned said how unusual it was to have a takedown of her because she was so quiet and essentially just not responding, but compliant. And yet she was taken down. So that kind of cuts against the argument that it was a necessary use of force. And I grant you that it is a short time, but I think that also shows the willful and wantonness because it's not like Ms. G was dealing with problems from Ms. Butler throughout. It was not like she was the typical thing you might see where someone is kicking or spitting or anything. Ms. Butler is just standing there, very intoxicated, and she steps away. And then Ms. G goes from zero to 60 and just slams her down to the ground. One of the benefits we have here is that the court must view facts in the light depicted by the videotape. So we actually have the entire incident. And when you watch that, you can see how, as I said, she's not holding her right. She just has her by the sleeve. And she admitted that because she did not have control over her because she had just her sleeve and her neck, that because she was handcuffed from behind, could not defend herself when she fell, and that she tripped her intentionally to knock her off balance, that because of that, the chances were good that she would be injured. Again, we submit to you that that is the definition of willful and wanton. Let me just see here. Again, the issue is whether or not the force is reasonable and the amount of force is reasonable under the circumstances. I want to address one of the cases that the court discussed and also was heavily referenced in Ms. Butler's brief, and that's the McGee case. So Ms. Butler's assertion, and the court appeared to accept that, was that because of the McGee case, this has to go to a jury. But we submit to you that that's not the case. First of all, in this court, the Eleventh Circuit in Prieto indicated that McGee does not say that it's required to go to a jury. In fact, they explicitly disavowed that, the Florida Supreme Court, and said it was only based on the facts that were presented at hand. So this is a factual issue that has to be determined in every case. I see my time is up. Okay, very well. You can revisit McGee on rebuttal if you need to. Okay. Thank you. All right. Very well. Let's hear from Mr. Farmer. Good morning. Morning. May it please the court. My name is Matt Farmer. I represent the appellee, Marie Butler. The issue in this case is whether or not the district court erred in denying summary judgment to the sheriff on the issue of malice, bad faith, and willful and wanton. So to state it a different way, the issue is whether or not a reasonable jury could find that the aggravated state of mind necessary for the sheriff to prevail existed. So as long as viewing the evidence in the light most favorable to the plaintiff, whether a jury could find that that aggravated state of mind did not exist, the district court in so doing found that summary judgment was due to be denied to the sheriff on that issue. Can I ask you just a quick question? Housekeeping, are you in light of the Florida Supreme Court's clarification of its own law in Jackson conceding in effect that we have jurisdiction? I am. Okay. Very well. Perfect. Thank you. And also based on the Joseph versus Chronister opinion from October of last year. Got it. And that was unpublished. It was about six days before my brief. I missed it. I would have. No, it's all good. Thank you for your candor. I appreciate your thing. So the issue really is starting with the McGee case. That's really kind of the fountainhead of this area of law. In that case, the Supreme Court of Florida found that a jury should decide whether or not that aggravated state of mind existed by a officer who essentially did exactly the same as Deputy G did in this case. Handcuffed prisoner. Force was applied after that prisoner was handcuffed. That prisoner was kicked. Again, that's more egregious, we would think, than what happened in this case, which was a sudden unthinking takedown. Not enough time at all for Deputy G to form that aggravated state of mind. And the Florida Supreme Court said that as a matter of law, we cannot determine that that is a bad faith, malicious or willful or wanton act that is kicking a handcuffed prisoner after that prisoner was under control. That is an issue. The question of the aggravated state of mind. That is an issue within the province of a jury. What is G's account of why she took your client down? Well, first of all, she says that she did not have time to think about it. It was uncontrolled. It was she didn't have time to formulate any kind of of malice toward Miss Butler. And she testified during the internal affairs process that she she interpreted the slight sway by Miss Butler away from Deputy G, who only had Miss Butler by the sleeve, interpreted that as a form of resistance that would justify under her training a takedown. Now, there was this happened so quickly that Deputy G did not have the time to formulate or even consider that Miss Butler was handcuffed. And that her account in a nutshell is, A, it happened quickly, B, the defendant at the time was moving a little bit and she instinctively reacted and took her down. That's right. That's the long and short of it. That's the long and short of it. And that's a far cry from that aggravated state of mind that's necessary for the for any court to decide that no jury could decide the contrary. Judge Judge Barber simply found that there's enough evidence in the light most favorable to Miss Butler that would allow a reasonable jury to find that that aggravated state of mind did not exist. And the sheriff contends that Miss Butler's demeanor, which was passive and relatively cooperative, very cooperative, peaceful, tranquil, that that somehow transformed this sudden act into a willful and wanton act. Let me ask the question. OK, what other corroborative evidence is there from other people who are at the scene that might be said to confirm what she said about the nature, purpose and understanding of the takedown? Well, the video is consistent with that approach. With that conclusion, Corporal Fox described that Miss Gee's demeanor was was calm and professional and that she was not upset or angry immediately before the takedown. And that's where I was getting to a moment ago where the peaceful demeanor of Miss Butler actually suggests that this wasn't an angry, malicious, bad faith, willful and wanton act because the cases, I think, show where courts do find that that aggravated state of mind existed. There was a reason for it. And it's usually something like Miss McCullough described where a more typical scenario is that an inmate is misbehaving, vocal, profane, and and the deputies just had enough of it and therefore decided that there's going to be a takedown and whatever happens happens. I think that's that's the more likely scenario where you find willful and wanton. In this case, Miss Deputy Gee had no reason to be upset with Miss Butler and that degree of rage and and punishment and desire to harm or hurt. That's the kind of aggravated state of mind that would provide a basis for sovereign immunity back to Sheriff Gualteri. Here, both sides agree this was a battery. And the only issue is, is it battery plus? Is it battery with an aggravated state of mind? And more specifically, whether a reasonable jury could find that that aggravated state of mind did not exist. And we think that in the light most favorable to Miss Butler, clearly a reasonable jury could conclude that that aggravated state of mind did not exist in this case. So unless there are any further questions, that's all I have this morning. Thank you. Very well. Thank you so much. All right, let's hear rebuttal. Thank you, Your Honor. Your Honor, this is an argument that's been made throughout by Miss Butler, which is ignoring what willful and wanton means and arguing that it has to be an angry, malicious conduct. But it is not the case. Willful and wanton is knowingly or reasonably should have known what would naturally and probably result in disregarding the foreseeable consequences. That's the McGrodin Middle District case, which was affirmed by the 11th Circuit, which Miss Butler concedes in her answer brief at page 34. PNC Bank, Middle District of Florida, affirmed at the 11th Circuit in 2011. And the Gregory case from Southern District of Florida, 2015. Again, it's the same as recklessness, which is Williams v. Mineola, a fifth DCA case. And again, also as least as high a standard as needed to prove deliberate indifference. That's the Swenson v. Pelichek case from the Middle District of Florida, 2021. It does not require Amy G to have anger. There was testimony that she said, are you effing kidding me, as she took her down, which could suggest that she had anger, but she doesn't have to have anger. It is really about her disregarding foreseeable consequences of the injury. And when you're talking about throwing somebody down on the ground, tripping them from behind, they're handcuffed. They can't defend themselves, heavily intoxicated. And there's no need for that because she's in a secured facility. She couldn't go anywhere. She has six other deputies in the area, some of them within a foot away. And she takes this action. I was discussing McGee. And I just wanted to get back to that. Mr. Farmer said that Ms. G did the same thing as done in McGee. And I completely disagree. In McGee, the allegation was that the person was handcuffed and in the booking area. And he said something along the lines of you and your family can't come back to my father's shop. At which point the deputy went over, grabbed him and pushed him up against the wall and then started kicking him. That's different than this. Because in this case, this is an uncontrolled force where we have foreseeable injury. And that's really where the issue is. In McGee, kicking the person, they're controlling the amount of force they're applying. Whether or not the person gets injured or not is another story. But this is a different situation. This is a slam down to the ground. A tripping, intentionally throwing her off balance, speeding her up. And this is also a situation where everybody is in agreement about how outrageous the conduct is. Because it's conceded that Ms. G was acting gratuitously, that she was unreasonable. It's got to be more than excessive and more than intentional. But gratuitous can support willful and wanton, Your Honor. And the other thing about the McGee case is that there were really very little development of the facts there, unlike our case. And so therefore, the facts were relatively sparse to address the willful and wanton. And as Justice Wells said in his dissent, that was really deciding about whether or not that deputy acted outside the scope of employment. But Justice Wells pointed out that it really is also about the two bases should remain distinct. And it's also about whether or not one acted willfully and wantonly. Well, Justice Wells concurred, as I read McGee. He did. He did. And the majority says, here Deputy Herndon clearly had lawful authority to restrain arrestees, detain them, or even respond with force in appropriate situations. His office gave him that authority, and he therefore cannot be described as a usurper. The fact that he may have intentionally abused his office does not shield the sheriff from liability. So it seems to me you've got to step outside your role as a deputy. They also point to time and place as being determinative. And here, I mean, she was there. She had the authority the sheriff gave her to detain the woman and exercise the authority within the station during the working hours. And there's no indication that she stepped outside the role of being a deputy to do this, is there? No, Your Honor. We're not arguing that she acted outside the scope of her employment. But as Justice Wells indicated, there are two bases. One of them has to do with whether or not someone acted outside the scope of employment. And the other one is whether or not they acted in bad faith and willfully and wantonly. He expressed concern that the decision made it look like that only one was needed. And he pointed out how there's two bases are needed. They have to remain distinct. And I would submit to you that there are numerous cases since. And I pointed out the Asperilla, Taylor v. Wagner. There's a Haberski case from the 11th Circuit in which the deputy actually used such force to pop the person's arm and broke the arm. And the 11th Circuit indicated that because the person was not resisting and was compliant, the force was sufficient. The amount of force was sufficient to determine it to be willful and wanton. So it isn't just about whether the person was acting within the scope of their employment. It's also whether or not they acted willfully and wantonly or in bad faith. I see my time is up. So I don't know if there are any other questions. Okay. Very well. Thank you. We would ask the court to reverse the decision. Thank you. Very well. Thank you so much. That case is submitted and we'll move to case number three.